[D.I. 28]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

ANTHONY BOCCHINO,

        Plaintiff,

   v.

CITY OF ATLANTIC CITY, et al.,

        Defendants.

Civil No. 14-233 (AMD)

**OPINION**

APPEARANCES:

Timothy J. McIlwain, Esq.
McIlwain, LLC
McIlwain Professional Building
2020 New Road, Suite A
Linwood, NJ 08221
    Attorney for Plaintiff Anthony Bocchino

John C. Hegarty, Esq.
Jasinski, P.C.
8025 Black Horse Pike
Suite 470
West Atlantic City, NJ 08232
    Attorney for Defendants

**DONIO**, Magistrate Judge

      In this action, Plaintiff Anthony Bocchino (hereinafter, "Plaintiff") alleges Defendants City of Atlantic City and Atlantic City Police Officers James Miltenberger[1] and

_____

[1] Defendant Officer James Miltenberger is incorrectly pled as "Mittenberger." (See Answer [D.I. 4].)

1

Donnell Holland (hereinafter, "Defendants") violated his federal civil rights in the course of arresting him following his removal from a nightclub in Atlantic City. (See Complaint [D.I. 1].) Specifically, Plaintiff asserts that Defendant Officers used excessive force in arresting Plaintiff and that Defendants failed to provide medical treatment. (Id.) Presently before the Court is Defendants' motion for summary judgment. (See Motion for Summary Judgment (hereinafter, "Defs.' Mot. [D.I. 28].) Defendants claim the force used was reasonable and Plaintiff was provided medical care. (See generally Brief [D.I. 28-2].) The incident was captured on surveillance video.[2] The Court has considered the parties' submissions, held oral argument, and for the reasons that follow, grants in part and denies in part Defendants' motion.[3]

It is undisputed that in the early morning hours of August 12, 2012 Plaintiff was "intoxicated while at The Pool

---

[2] A compact disc containing the surveillance video from the incident was included as an exhibit to Defendants' motion. (See Certification of John C. Hegarty, Esq. (hereinafter, "Hegarty Certification"), Exhibit O [D.I. 28-3].) The surveillance video does not contain audio. The Court has "relied on the videotape[], where possible, to state the facts of this case." Green v. New Jersey State Police, 246 F. App'x 158, 159 n.1 (3d Cir. 2007).

[3] The parties have consented to this Court's jurisdiction pursuant to 28 U.S.C. § 636(c)(1), Federal Rule of Civil Procedure 73(b), and Rule 73.1 of the Local Civil Rules for the United States District Court, District of New Jersey. (See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge [D.I. 8], May 27, 2014.)

After Dark at Harrah's Resort" (hereinafter, "The Pool") in Atlantic City. (Defendants' Statement of Undisputed Material Facts (hereinafter, "Defs.' Facts") [D.I. 28-1], ¶ 1; see also Plaintiff's Response to Defendants' Statement of Undisputed Material Facts (hereinafter, "Pls.' Response") [D.I. 38], ¶ 1.) The parties dispute nearly all other facts related to the incident. Defendants assert that on August 12, 2012 "Officers Miltenberger and Holland were summoned to the rear of [The Pool] in reference to a disorderly male[, Plaintiff,] who was arguing and pushing one of the bouncers." (Defs.' Facts [D.I. 28-1], ¶ 10(a).) Defendants describe Plaintiff as a "284 pound man" (Brief [D.I. 28-2], 1), while Plaintiff asserts he was "overweight, of below average height and completely unarmed." (Response in Opposition (hereinafter, "Pl.'s Brief") [D.I. 38], 17.) Defendants maintain that upon arriving at The Pool, "[Defendant] Officer Miltenberger witnessed the intoxicated male in a physical altercation with the bouncers and they were attempting to remove him from the rear door." (Defs.' Facts [D.I. 28-1], ¶ 10(b).) Defendants assert "[Defendant] Officers Miltenberger and Holland assisted the bouncers in removing [Plaintiff] and led him to the back of the house . . . away from the hotel guests to minimize any danger to them." (Id. at ¶ 10(c).)

3

Defendants further claim that Plaintiff was disruptive and yelled obscenities and racial epithets. (Id. at ¶¶ 10(g), 11(i), 13, 14, 16, 21.) Defendants maintain Defendant Officer Holland "observed [P]laintiff raise his hands in a combative stance." (Id. at ¶ 17.) Defendants assert Defendant "Officer Miltenberger placed his hand on top of [P]laintiff's clenched fists and told [P]laintiff to relax, that he was free to go to any other casino but could not stay at Harrah's." (Id. at ¶ 28.) Defendants maintain Plaintiff then spit on Officer Miltenberger who in response, "struck [P]laintiff in the face several times to prevent him from spitting in his face again." (Id. at ¶ 10(i).) According to Defendants "Plaintiff was then taken to the ground where he resisted and was finally placed into handcuffs and transported to the in-house holding cell" within the casino. (Id. at ¶ 10(j).)

As it relates to the actions in the in-house holding cell, Defendants maintain Plaintiff "was very disruptive," spit blood on the wall, and cursed at the security guards and police officers. (Id. at ¶ 10(l).) Defendants assert that while Plaintiff was in the in-house holding cell he "refuse[d] repeated lawful orders to remain seated." (Id. at ¶ 22.) Officer Holland certifies in his interrogatory answers that "[w]hen Plaintiff attempted to leave the holding area and refused my instructions to sit down, fearing he would harm me, the security

4

officers or himself[,] I used reasonable force to get him to
comply." (Hegarty Certification, Exhibit I [D.I. 28-3], ¶ 10.)
In their summary judgment brief, Defendants describe the contact
between Officer Holland and Plaintiff in the following way:

> It was not until [P]laintiff left his seat
> and walked out of the holding room – in
> direct contravention of the officers' lawful
> orders – that Holland was constrained to use
> physical force to direct him back to his
> seat. And the force used was minimal;
> Holland placed his right hand on
> [P]laintiff's shoulder and left hand on
> [P]laintiff's chest to guide him. Holland
> did not touch [P]laintiff after he was
> seated until [P]laintiff again, only twenty-
> two seconds later, stood up and walked
> toward the door. And Holland again acted
> reasonably in response: for just two
> seconds, Holland placed his right hand on
> the left side of [P]laintiff's neck to guide
> [P]laintiff back into the seat."

(Defs.' Brief [D.I. 28-2], 13-14.)

As it relates to the failure to provide medical care
claim, Defendants maintain that "[t]he in-house nurse was
summoned to treat [P]laintiff for bleeding from his mouth."[4]
(Defs.' Facts [D.I. 28-1], ¶ 10(k).) Defendants contend
"Plaintiff was treated, released and transported to the station
for processing." (Id. at ¶ 10(m).) Defendants maintain that
following the incident, "[a]n X-Ray of [P]laintiff's mandible

---

[4] Defendants also contend, citing to the Harrah's Incident File
Full Report, that "[a]n ambulance was dispatched to treat
[P]laintiff for a laceration on his face." (See Defs.' Facts
[D.I. 28-1] at ¶ 11(o).)

(his jaw) was normal[]" and "Plaintiff was diagnosed with a lip contusion." (Id. at ¶¶ 35-36.)

In his submission opposing the motion, Plaintiff relies exclusively on the surveillance video. (See, e.g., Pl.'s Response [D.I. 38], ¶¶ 10(f)-(k), 13-22, 24-29 (stating, in part, "[v]ideo evidence contradicts").) There is no dispute that "Plaintiff only has a 'vague' memory of the evening 'with many gaps'" (Defs.' Facts [D.I. 28-1], ¶ 3; see also Pl.'s Response [D.I. 38], ¶ 3), and that Plaintiff's only information about the events from the night "is from the police report and the surveillance video." (Defs.' Facts [D.I. 28-1], ¶ 5; see also Pl.'s Response [D.I. 38], ¶ 5.) Plaintiff, citing only to the surveillance video, denies that Plaintiff was disruptive in the holding cell and states "Plaintiff was requesting medical attention." (Pl.'s Response [D.I. 38], ¶ 10(l).) Plaintiff also denies Defendants' assertion that "Plaintiff was treated, released and transported to the station for processing" (Defs.' Facts [D.I. 28-1], ¶ 10(m), and contends that "Plaintiff was treated in Northern New Jersey eight hours after injury." (Pl.'s Response [D.I. 38], ¶ 10(m).) Plaintiff also denies, in part, Defendants' facts related to Plaintiff's medical records and asserts "[t]he medical records indicate other contusions." (Id. at ¶¶ 35-36.)

6

The parties do not dispute that following the incident Plaintiff was charged with aggravated assault in violation of N.J.S.A. 2C:12-1b(5)(a); resisting arrest in violation of N.J.S.A. 2C:29-a(3)(a); and throwing bodily fluid at a law enforcement employee in violation of N.J.S.A. 2C:12-13. (Defs.' Facts [D.I. 28-1], ¶¶ 6-8; see also Pl.'s Response [D.I. 38], ¶¶ 6-8.) Also undisputed is the fact that following the incident "Officer Miltenberger filed a Use of Force Report indicating that [P]laintiff resisted police officer control and that Officer Miltenberger used a compliance hold and his hands/fists toward [P]laintiff." (Defs.' Facts [D.I. 28-1], ¶ 9; see also Pl.'s Response [D.I. 38], ¶ 9.)

Plaintiff filed this action on January 13, 2014 and alleges generally that he was "without basis or provocation, brutally beat," "restrained," "falsely imprisoned," and "falsely charged [] with aggravated assault" by Defendants (Complaint [D.I. 1], ¶ 8), following his removal from an Atlantic City nightclub "after a non-violent word exchange with a bouncer at the nightclub." (Id. at ¶¶ 5-6.) Plaintiff asserts that "[a]s a result of the actions of the individually named Officers, [he] has suffered severe emotional trauma as well as physical injury, loss of income and other expenses[.]" (Id. at ¶ 9.) Specifically, Plaintiff alleges that he was subjected to excessive force in violation of his Fourth and Fourteenth

Amendment rights (id. at ¶¶ 11-19), he was denied medical care
(id. at ¶¶ 20-26), and that Defendant City of Atlantic City
engaged in "deliberately indifferent policies, practices,
customs, training, and supervision in violation of the [F]ourth,
[F]ourteenth, and [F]irst [A]mendments and in violation of 42
U.S.C. § 1981." (Id. at ¶¶ 27-43.) Plaintiff seeks compensatory
and punitive damages, attorneys' costs and fees, and any
"further relief as the Court may deem just, proper, and
appropriate." (Id. at ¶ 44.) Defendants deny Plaintiff's
allegations and assert a number of legal defenses. (See
generally Answer [D.I. 4].) Fact discovery concluded on April
30, 2015 (see Amended Scheduling Order [D.I. 20], Mar. 30,
2015), and Defendants timely filed the present motion. (See
Amended Scheduling Order [D.I. 26], June 4, 2015; see also
Defs.' Mot. [D.I. 28].)

    Defendants argue that "the record lacks any evidence
establishing the existence of [P]laintiff's cause of action" and
that consequently, Plaintiff "cannot sustain his burden of
proof." (Brief [D.I. 28-2], 4.) Defendants' brief presents the
following specific arguments: (1) that "Defendant officers []
did not use excessive force against [P]laintiff and [P]laintiff
fails to provide any evidence that Miltenberger, Holland, or any
Atlantic City police officer violated his constitutional rights"
(id. at 6); (2) that "Defendant officers are entitled to

qualified immunity" (id. at 14); (3) that "Plaintiff fails to present any evidence to support his claim against the City of Atlantic City" (id. at 17-23); and (4) that "[t]he record is devoid of any evidence supporting [P]laintiff's claim that he was denied medical care." (Id. at 24.) Plaintiff argues that Defendants' motion should be denied because "[p]olice officers are clearly covered by the language of [§] 1983" (Pl.'s Brief [D.I. 38], 15); the video evidence "unmistakabl[y]" demonstrates that excessive force was used against Plaintiff" (id. at 15); and generally, that "Plaintiff is entitled to every favorable inference from the evidence that a genuine issue of fact exists for a jury." (Id. at 16.)

"[S]ummary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Alabama v. North Carolina, 560 U.S. 330, 344 (2010) (citations and internal quotation marks omitted); see also FED. R. CIV. P. 56(a). A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law[.]" Id. "Factual disputes that are irrelevant or unnecessary will not be counted." Id.

The moving party bears the initial burden of "identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof[,] . . . the burden on the moving party may be discharged by 'showing' — that is, pointing out to the district court — that there is an absence of evidence to support the nonmoving party's case." Id. at 325. A non-moving party must present more than "'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." McCabe v. Ernst & Young, LLP, 494 F.3d 418, 436-37 (3d Cir. 2007) (quoting Podobnik v. U.S. Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005)); see also Anderson, 477 U.S. at 249-50. The Court must view the evidence in a light most favorable to the non-moving party and any "justifiable inferences" shall be extended to the non-moving party. Anderson, 477 U.S. at 255.

Section 1983 states in pertinent part,

[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities

10

> secured by the Constitution and laws, shall
> be liable to the party injured in an action
> at law, suit in equity, or other proper
> proceeding for redress . . . .

42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 84 (1988) (citations omitted).

The Court turns first to Defendants' arguments that the record "does not establish" Defendant Officers Miltenberger and Holland used excessive force against Plaintiff and that Defendant Officers Miltenberger and Holland are entitled to qualified immunity. (See Brief [D.I. 28-2], 6-17.) The first count of Plaintiff's complaint alleges in part, that Defendant officers used excessive force in violation of Plaintiff's Fourth and Fourteenth Amendment rights. (See Complaint [D.I. 1], ¶¶ 11-19.) At oral argument, Plaintiff's counsel clarified that Plaintiff complains of two distinct instances of excessive force: (1) Defendant Officer Miltenberger striking Plaintiff prior to Plaintiff being handcuffed; and (2) Defendant Officer Holland pushing Plaintiff while he was handcuffed in the casino in-house holding area.

Claims of excessive force at the time of an arrest are evaluated based on the Fourth Amendment's prohibition against unreasonable searches and seizures. See Rivas v. City of Passaic, 365 F.3d 181, 189 (3d Cir. 2004) (noting "[t]he Supreme Court has held that all claims of excessive force by police officers, in the context of an arrest, investigatory stop, or other 'seizure,' should be analyzed under the Fourth Amendment" (citing Graham v. Connor, 490 U.S. 386, 395 (1989))). Claims of excessive force at the time an individual is a pretrial detainee are evaluated based on the Due Process Clause of the Fifth or Fourteenth Amendment. See Kingsley v. Hendrickson, 135 S. Ct. 2466, 2473 (2015) (noting "[w]e have said that 'the Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment'" (quoting Graham, 490 U.S. at 395 n.10)). The Third Circuit has recently noted that the exact point at which an individual transitions from arrestee to pretrial detainee has not been expressly ruled upon by the Circuit. See Halsey v. Pfeiffer, 750 F.3d 273, 291 (3d Cir. 2014) (noting "[i]n the future . . . we might be required to decide precisely when an unlawful seizure ends and [a] due process . . . [violation] begins" (alterations in original) (internal quotation marks omitted)). Under Third Circuit law, force used by a police officer "in the police station garage, after [the arrestee] had been transported from the scene of the

12

initial beating" although, "the closest – both temporally and spatially – to pre-trial detention at the station house . . . [was found to have] occurred during the course of [a] defendant's arrest." United States v. Johnstone, 107 F.3d 200 (3d Cir. 1997).[5] Recently, a court in this district, relying on Johnstone, found that alleged excessive force against an individual "during his transport to the police station must be analyzed under the Fourth Amendment."[6] Panarello v. City of Vineland, No. 12-4165, 2016 WL 475246, at *14 (D.N.J. Feb. 8, 2016).

Defendants argue that the Fourth Amendment governs Plaintiff's excessive force claims. (See Defs.' Brief [D.I. 28-2], 6-14.) While Plaintiff's complaint alleges excessive force in violation of both Plaintiff's Fourth and Fourteenth Amendment rights (see Complaint [D.I. 1], ¶¶ 11-12), Plaintiff's brief references that Plaintiff's excessive force claims should be governed by the Fourth Amendment. (See Pl.'s Brief [D.I. 38], 16 (stating that the video evidence "establishes that under color of state law Defendants violated Plaintiff's 4th amendment rights").) The Court concludes that, here, Plaintiff was an

---

[5] In so ruling, the Johnstone court did not decide "where an arrest ends and pretrial detention begins[.]" 107 F.3d at 205.

[6] The Panarello court also concluded that "because [the defendant] was arrested without a warrant, relying on the weight of authority from the other [] circuits, the Fourth Amendment applies to the alleged use of force while in the police station booking room." 2016 WL 475246, at *14.

arrestee at the time of the alleged excessive force, because at that time Plaintiff had not yet been transported to the police station. Consequently, Plaintiff's excessive force claims will be evaluated under the Fourth Amendment.

In determining whether the force used violates the Fourth Amendment, the Court employs an objective standard and "scrutinizes the reasonableness of the challenged conduct." Carswell v. Borough of Homestead, 381 F.3d 235, 240 (3d Cir. 2004). This standard "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham v. Connor, 490 U.S. at 396 (citing Tennessee v. Garner, 471 U.S. 1, 8-9 (1985)). Whether a particular use of force is reasonable "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id. (citing Terry v. Ohio, 392 U.S. 1, 20-22 (1968)). Moreover, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers . . . violates the Fourth Amendment [and] [t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments - in circumstances that are tense, uncertain, and

rapidly evolving – about the amount of force that is necessary in a particular situation." Graham, 490 U.S. at 396 (internal citation and quotation marks omitted).

Additionally, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate 'clearly established' statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In determining whether qualified immunity applies, the court "decide[s] whether the facts, taken in the light most favorable to the plaintiff, demonstrate a constitutional violation" and "whether the constitutional right in question was clearly established." Couden v. Duffy, 446 F.3d 483, 492 (3d Cir. 2006). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier v. Katz, 533 U.S. 194, 201 (2001). "If the officer's mistake as to what the law requires is reasonable, the officer is entitled to qualified immunity. Couden, 446 F.3d at 492. Courts have discretion to determine which prong "of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Pearson v. Callahan, 555 U.S. 223, 226 (2009). Furthermore, "[a]lthough it

15

is important to resolve qualified immunity questions at the earliest possible stages of litigation, the importance of resolving qualified immunity questions early 'is in tension with the reality that factual disputes often need to be resolved before determining whether defendant's conduct violated a clearly established constitutional right.'" Phillips v. Cty. of Allegheny, 515 F.3d 224, 242 n.7 (3d Cir. 2008) (quoting Curley v. Klem, 298 F.3d 271, 277-78 (3d Cir. 2002)). Accordingly, "[a] decision as to qualified immunity is 'premature when there are unresolved disputes of historical facts relevant to the immunity analysis.'" Id. (quoting Curley, 298 F.3d at 278).

Defendants assert that under the circumstances of the present case Defendant Officers Miltenberger and Holland "did not use excessive force against [P]laintiff" (Brief [D.I. 28-2], 6) and that the force used against Plaintiff was reasonable. (Id. at 14.) Defendants maintain that Plaintiff "raised his hands in a combative stance," that Plaintiff was asked "several times" by Defendant Officer Miltenberger to lower his arms, "[b]ut instead of doing so, [P]laintiff attempted to push Miltenberger backwards and charge the bouncers who evicted him from the club" and "spit in Miltenberger's face." (Id. at 11.) Defendants contend that "[u]naware if [P]laintiff had any infectious diseases, Miltenberger struck [P]laintiff in the face several times, in rapid succession, in both self-defense and to

16

subdue him." (Id.) With respect to Defendant Officer Holland, Defendants contend that "[i]t was not until [P]laintiff left his seat and walked out of the holding room – in direct contravention of the officers' lawful orders – that Holland was constrained to use physical force to direct him back into his seat." (Id. at 13.) Defendants also argue Defendant Officers Miltenberger and Holland are entitled to qualified immunity because there was no constitutional violation and the Defendant Officers' actions "were also objectively reasonable and lawful under the circumstances." (Id. at 15.) Plaintiff contends "the video in this case directly contradicts [D]efendants' papers and provides compelling evidence, if not proof, of the use of excessive force." (Pl.'s Brief [D.I. 38], 15.) Furthermore, Plaintiff asserts generally, "[b]ased on the standard provided to us [by] [D]efendants, the Defendant Police Officers are clearly not qualifiedly immune." (Id. at 20.)

The Court finds that there remain genuine issues of material fact precluding entry of summary judgment with respect to Plaintiff's excessive force claims against Defendant Officers Miltenberger and Holland. From the surveillance video footage, the Court concludes that a jury could find either Defendant Officer Miltenberger or Defendant Officer Holland or both Defendant Officers used excessive force. See, e.g., Ringgold v. Keller, 608 F. App'x 102, 104 (3d Cir. 2015) (concluding in an

17

excessive force case filed by an inmate against corrections officers, from video footage showing one defendant pull the plaintiff down and one defendant appear to "tackle" the plaintiff "to the ground" as well as one of the defendants "swinging his arm in what may have been a punch" at the plaintiff, that a jury could find either of the defendants or both used excessive force on the plaintiff). As it relates to Officer Miltenberger, the surveillance video shows Plaintiff being pulled from the door of the nightclub and into the casino hallway by two security guards. The video shows the security guards, while holding Plaintiff's arms, walk Plaintiff to an area Defendants describe as "the back of the house" which was separated by a set of doors. (Defs.' Facts [D.I. 28-1], ¶ 10(c).) Approximately two seconds later, the video shows Defendant Officer Miltenberger joining the security guards and Plaintiff, and the security guards letting go of Plaintiff's arms, but remaining either directly adjacent to or within arms-length of Plaintiff. The video appears to show the security guards and/or Defendant Officer Miltenberger exchanging words with Plaintiff. While this exchange is occurring, the video shows Defendant Officer Holland entering the area and putting on a pair of black gloves. The surveillance video then shows Defendant Officer Miltenberger holding Plaintiff's hands and an exchange and movement by both Plaintiff and Defendant Officer

Miltenberger that a reasonable juror could conclude, as
Defendants contend, was Plaintiff "spit[ting] in Officer
Miltenberger's face." (Defs.' Facts [D.I. 28-1], ¶ 10(i)). The
surveillance video then shows Defendant Officer Miltenberger
striking Plaintiff directly in the face, then again directly in
the face, and once more grazing Plaintiff's cheek before
Plaintiff falls to the ground.[7] The surveillance video shows, as
Plaintiff is falling to the ground, Defendant Officer
Miltenberger moving his arm as if to strike Plaintiff again, but
it is unclear from the video whether he makes contact with
Plaintiff. Additionally, as Plaintiff is falling to the ground,
the video shows Defendant Officer Holland cradling Plaintiff's
head as Plaintiff falls to the ground. The video then shows
Defendant Officers Miltenberger and Holland dragging Plaintiff
away from the wall, rolling Plaintiff onto his stomach, and
handcuffing Plaintiff behind his back. The video shows Plaintiff
lying on the ground for approximately one (1) minute and
thirteen (13) seconds and being brought to his feet with the
assistance of the Defendant Officers less than one (1) minute
after being handcuffed. The video then shows Plaintiff, in
handcuffs, being led by Defendant Officers to what the

---

[7] Plaintiff asserts in his brief that he "was completely
unconscious after being punched to the ground" (See Pl.'s Brief
[D.I. 38], 19), and Plaintiff's counsel represented at oral
argument that Plaintiff had been "knocked out."

Defendants describe as the "in-house holding cell area." (Defs.'
Facts [D.I. 28-1], ¶ 10(l).) The video shows Plaintiff, while
handcuffed, being led to and seated on a small bench large
enough for only one person, enclosed in a recessed area of the
wall.

      The alleged excessive force involving Defendant
Officer Holland relates to contact while Plaintiff is in the in-
house holding area. The surveillance video shows Plaintiff
standing up, taking several steps away from the bench area, and
attempting to walk into a hallway area approximately one (1)
minute and fifteen (15) seconds after sitting down. As Plaintiff
attempts to walk into the hallway, the video shows Defendant
Officer Holland placing both of his hands on Plaintiff's chest
and pushing Plaintiff towards the bench and Plaintiff falling
backwards towards the bench, sliding off the bench, and hitting
his head against the wall. The video then shows Defendant
Officer Holland placing both of his hands on Plaintiff's chest
and pushing Plaintiff towards the bench while Plaintiff is
kneeling on the ground. The video then shows Plaintiff standing
up and sitting on the bench. Less than one (1) minute later, the
video shows Plaintiff again standing up, taking several steps
away from the bench area, and attempting to walk into the
hallway area. The video then shows Defendant Officer Holland
placing one hand on Plaintiff's neck and pushing Plaintiff onto

the bench. While Plaintiff is sitting, the video then shows Defendant Officer Holland placing his hand on Plaintiff's neck and pushing Plaintiff against the wall.

The surveillance video is not a complete version of the events giving rise to Plaintiff's excessive force claims because it does not contain audio. Although Defendants maintain that Defendant Officer Miltenberger "struck [P]laintiff in the face several times to prevent him from spitting in his face again" (Defs.' Facts [D.I. 28-1], ¶ 10(i)) and that while in the in-house holding cell, Plaintiff "refuse[d] repeated lawful orders to remain seated" (Id. at ¶ 22), in viewing the evidence in the light most favorable to Plaintiff, the Court finds that a reasonable juror could conclude that Plaintiff, who at all times relevant to the alleged excessive force was isolated from the public, and was either surrounded by two security guards and two police officers or handcuffed and in close proximity to at least one police officer, was subjected to excessive force by either Defendant Officer Miltenberger or Defendant Officer Holland or both Defendant Officers. See Patterson v. City of Wildwood, 354 F. App'x 695, 698 (3d Cir. 2009) (finding that a jury could conclude that a videotape was inconsistent with a party's version of the relevant events or give rise to different inferences where the video "[did] not portray the actual incident"); see also Fried v. Tetzlaff, No. 11-2578, 2014 WL

21

2861098, at *7 (D.N.J. June 24, 2014) (concluding that the jury must resolve the issues of fact as to what happened during an alleged struggle between the plaintiff and the defendant in an excessive force case where the plaintiff had no memory of the events and an audio tape without accompanying video of the alleged events existed); see also Sorrell v. Tropicana Atl. City Corp., No. 12-2369, 2014 WL 7336699, at *2-3 (D.N.J. Dec. 19, 2014) (concluding that "to grant summary judgment where the video evidence provided is incomplete would be in error" where "the video cuts out" and was "not accompanied by any audio").

The cases cited by Defendants in support of their motion, Davis v. Twp. of Paulsboro, 421 F. Supp. 2d 835 (D.N.J. 2006), Reyes v. Chinnici, 54 F. App'x 44 (3d Cir. 2002), Wardlaw v. Pickett, 1 F.3d 1297 (D.C. Cir. 1993), cert. denied, 512 U.S. 1270 (1994), and Winters v. Adams, 254 F.3d 758 (8th Cir. 2001) are distinguishable from the present case. First, and most importantly, the cases relied on by Defendants reflect that there was no video evidence of the alleged incidents. In Davis, the court concluded, in part, that the plaintiff who "was visibly agitated, acting aggressively and yelling profanities"; "bang[ing] the walls in his house"; and who "shoved" an officer three times "posed an immediate threat to [the police officer who was present] and possibly others in the house" and that "therefore, spraying [the plaintiff] once with pepper spray was

22

objectively reasonable" and did not constitute excessive force under the circumstances. 421 F. Supp. 2d at 854-55. The arrest in Davis, unlike the arrest in the present case, involved spraying of pepper spray at a time where the plaintiff was in a private home where other individuals may have been present and at risk. Furthermore, the Davis court noted that the only testimony presented in the summary judgment motion was from police officers and that "Plaintiffs have failed to put forth any admissible evidence from which th[e] [c]ourt might at least infer that the alleged misdeeds actually occurred[.]" Id. at 854. In Reyes, the Third Circuit affirmed the district court's grant of summary judgment to the defendants in a convicted prisoner excessive force case, in which the court considered "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm" pursuant to the Eighth Amendment, 54 F. App'x at 47 (citations and internal quotation marks omitted), and not, as the claims are here, pursuant to the objective reasonableness standard of the Fourth Amendment. In Wardlaw, the D.C. Circuit affirmed the district court's grant of summary judgment in an excessive force case where one defendant punched the plaintiff "once in the jaw and two or three times in the chest." 1 F.3d at 1300. In Wardlaw the defendants, United States Marshals, were in a stairwell in the process of removing the plaintiff's friend

23

from the courthouse when the plaintiff "rushed down the stairs" towards the defendants, "shouting '[d]on't hurt him please' [and] 'he's totally nonviolent'" and was punched by one of the defendants. Id. The D.C. Circuit, relying on a qualified immunity standard, concluded that "no reasonable jury could find that [the defendant's] use of force was so excessive that no reasonable officer could have believed it to be lawful." Id. at 1304. In so holding, the Wardlaw court reasoned that the defendants "were in a vulnerable position, caught in a stairwell and moving an uncooperative individual"; that the plaintiff "shouted" at the defendants "raising a fear that he was about to attack"; and that "once it became apparent that [the plaintiff] was not going to attack, [the defendant] did not hit him"; and the plaintiff "did not consider his injuries to be severe enough to require medical attention." Id. Here, the alleged excessive force did not occur in a public place and Defendants were not in such a "vulnerable" position, the only individual the Defendant Officers were dealing with was Plaintiff and, for at least part of the time, additional security guards were present. Finally, in Winters, the Eighth Circuit found that an officer's "single blow to [an arrestee's eye] was objectively reasonable" where the arrestee was "behaving quite erratically"; "was kicking and flailing at the officers in an attempt to prevent the officers from removing him from [a] car"; "struck [the officer] in the

24

face prior to being struck himself"; and "continued to act in an unresponsive and violent manner and had to be restrained in leather straps . . . for several hours for the protection of the staff" after being taken to the hospital, where he was diagnosed with "'methamphetamine intoxication.'" 264 F.3d at 765. Plaintiff was struck by Defendant Officer Miltenberger multiple times and the Court shall leave to the jury whether, from the video, Plaintiff is acting violently or erratically. Consequently, the Court, giving all reasonable inferences to Plaintiff, finds that the issue of whether Defendant Officers Miltenberger and Holland's physical contact with Plaintiff constitutes excessive force cannot be resolved by way of summary judgment and the Court denies Defendants' motion on this ground.

Likewise, because genuine issues of material fact exist with regard to the conduct of Defendant Officers Miltenberger and Holland, the Court will not make a finding on the issue of qualified immunity at this time. See Fried, 2014 WL 2861098, at *7 (concluding, in an excessive force case, that "[b]ecause a jury must resolve the issues of fact with respect to what happened during the struggle, this Court cannot render a decision on qualified immunity as to [a defendant officer] at this time"); see also Prince v. Aiellos, No. 09-5429, 2013 WL 6865619, at *6 (D.N.J. Dec. 20, 2013) (finding that because "the [c]ourt has concluded that there are material issues of fact in

25

dispute as to whether [the] [d]efendant's actions . . . violated [the] [p]laintiff's constitutional rights . . . [i]t naturally follows that the [c]ourt cannot determine, as a matter of law, whether a constitutional violation has occurred for purposes of assessing [the] [d]efendant's entitlement to qualified immunity until such time as the foregoing factual issues are resolved by the jury").

The Court next considers Defendants' motion for summary judgment on behalf of Defendant City of Atlantic City. (See Defs.' Brief [D.I. 28-2], 17-23). Plaintiff's complaint contains a number of allegations with respect to Defendant City of Atlantic City concerning the establishment of policies and procedures that are deliberately indifferent to the constitutional rights of arrestees, improper training, and a policy or practice of the Internal Affairs Bureau of failing to investigate complaints. (See Complaint [D.I. 1], ¶¶ 14-16, 23, 36-41, 43-44.) Defendants argue Plaintiff insufficiently pleads a Monell claim.[8] See, e.g., Monell v. N.Y. Dep't of Soc. Servs., 436 U.S. 658 (1978). (Defs.' Brief [D.I. 28-2], 19.) Specifically, Defendants assert that "[P]laintiff's complaint

---

[8] The Court agrees with Defendants that Plaintiff raises only three counts in his complaint and does not plead any state claims or assert any claims under the First Amendment, 42 U.S.C. § 1981, or 42 U.S.C. § 1988. (See Brief [D.I. 28-2], 5 n.3.)

fails to identify what policy or custom was the moving force behind the excessive force [D]efendant [O]fficers allegedly used when arresting [P]laintiff, aside from a vague reference to the Internal Affairs Bureau's alleged failure to investigate and handle complaints." (Id. at 22; see also Complaint [D.I. 1], ¶ 43.) Defendants also assert that "[t]he record is devoid of any evidence that the City adopted a policy or custom that caused [P]laintiff's injury." (Defs.' Brief [D.I. 28-2], 22.) Specifically, Defendants assert "[P]laintiff neither identified any criticism of the City's training nor produced an expert report. Simply, there is no evidence whatsoever to support [P]laintiff's Monell claim." (Id. at 23.) Plaintiff argues that an expert is not needed to establish its Monell claim and the claim should be decided by a jury. (Pl.'s Brief [D.I. 38], 20.)

"[A] municipality cannot be held liable under § 1983 on a *respondent superior* theory."[9] Monell, 436 U.S. at 691. A municipality may, however, be sued directly under § 1983 where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation or decision officially adopted and promulgated by that body's officers." Id.

---

[9]  Accordingly, the Court dismisses Plaintiff's claim that "Defendant [City of Atlantic City] is responsible for the conduct of Defendants Mi[l]tenberger and Holland under the doctrine of respondent superior due to the master-servant relationship which existed at the time of the incident[.]" (Complaint [D.I. 1] ¶ 44 (emphasis omitted).)

at 690. Municipal liability under § 1983 may be premised on policy or custom. McTernan v. City of York, PA, 564 F.3d 636, 657 (3d Cir. 2009). "'Policy is made when a decisionmaker possess[ing] final authority to establish a municipal policy with respect to the action issues an official proclamation, policy, or edict.'" Id. at 658 (quoting Andrews v. City of Phila., 895 F.2d 1469, 1480 (3d Cir. 1990)). Conduct is considered a custom "'when, though not authorized by law, such practices of state officials [are] so permanently and well-settled as to virtually constitute law.'" Id. (quoting Andrews, 895 F.2d at 1480. "Custom requires proof of knowledge and acquiescence by the decisionmaker." Id.

The plaintiff must "show that 'through its deliberate conduct, the municipality was the moving force behind the injury alleged.'" Wicks v. Lycoming Cty., 456 F. App'x 112, 115 (3d Cir. 2012) (quoting Bd. of Cty. Comm'rs v. Brown, 520 U.S. 397, 404 (1997)). Specifically, the plaintiff must show "that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences. A showing of simple or even heightened negligence will not suffice." Bd. of Cty. Comm'rs, 520 U.S. at 407 (internal citation omitted). "Where the policy 'concerns a failure to train or supervise municipal employees, liability under section 1983 requires a showing that the failure amounts to 'deliberate indifference' to the rights of persons

28

with whom those employees will come into contact.'" Thomas v. Cumberland Cty., 749 F.3d 217, 222 (3d Cir. 2014) (quoting Carter v. City of Phila., 181 F.3d 339, 357 (3d Cir. 1999)). A failure to train claim also requires that "the identified deficiency in a city's training program must be closely related to the ultimate injury; or in other words, the deficiency in training [must have] actually caused the constitutional violation." Id. (internal quotation marks omitted) (quoting City of Canton v. Harris, 489 U.S. 378, 391 (1989)).

Without addressing the sufficiency of Plaintiff's pleading, the Court agrees with Defendants' contention that Plaintiff has not set forth any facts to support a Monell claim against Defendant City of Atlantic City. See Baker v. United States, No. 15-1521, 2016 WL 496045, at *2 (3d Cir. Feb. 9, 2016) (finding that the district court did not abuse its discretion in rejecting Monell testimony offered by the plaintiffs' expert, and consequently, that because the plaintiffs had "offered no other evidence to support their allegations that [the defendant municipality] had failed to train the law enforcement officers," the district court properly dismissed the plaintiffs' Monell claim); see also Simmons v. Timek, Nos. 04-0572, 05-5080, 06-0445, 2007 WL 4556955, at *11 (D.N.J. Dec. 19, 2007) (granting the defendants' motion for summary judgment as to the plaintiff's Monell claims where the

29

plaintiff identified the city's policy against excessive force, but did "not demonstrate[] how the [defendants] ha[d] failed to train the officers on this policy"); see also Trafton v. City of Woodbury, 799 F. Supp. 2d 417, 431 & n.11 (D.N.J. 2011) (granting the defendant's motion for summary judgment, finding that the plaintiff's complaint did not assert a Monell claim against the defendant municipality and the "[p]laintiff failed to provide any evidence of a policy of deliberate indifference to constitutional rights").

The Court notes that courts in this district have denied summary judgment motions filed by the City of Atlantic City in excessive force cases where the plaintiff alleged municipal liability pursuant to § 1983 against the City of Atlantic City. See Worrall v. City of Atl. City, No. 11-3750, 2013 WL 4500583 (D.N.J. Aug. 20, 2013); see also Cordial v. Atl. City, No. 11-1457, 2014 WL 1095584 (D.N.J. Mar. 19, 2014). In Worrall, the plaintiff provided a record of citizen complaints for one defendant officer which stated that, over a three year and nine month period, the defendant officer was the subject of twenty-one complaints, and of those complaints, fifteen involved excessive force or some level of assault and the remainder involved harassment, standard of conduct, or an improper search. 2013 WL 4500583, at *3. The Worrall plaintiff also provided an internal affairs report on the complaint of another individual

who alleged to have been assaulted at the same location and on the same evening as the plaintiff. Id. The Court found in Worrall that although the plaintiff's submissions "teeter[ed] on the border of insufficiency," the evidence presented was nonetheless sufficient to withstand the City of Atlantic City's motion for summary judgment with respect to plaintiff's claim that the City of Atlantic City was "deliberately indifferent to the violent propensities of its police officers" including those named as individual defendants in that case. Id. at *3-4. The Worrall court reasoned that "[g]iven the number of complaints against [the defendant officer], the related subject matter, and relatively short time span within which the various complaints were filed, the [c]ourt [found] that [p]laintiff ha[d] presented sufficient evidence to create a triable issue of fact" and "[a]lthough all of the complaints were either 'not sustained' or [the defendant officer] was deemed 'exonerated,' the [c]ourt [found] in accordance with Beck[10], that a jury could still infer knowledge and acquiescence and deliberate indifference." Id. at *5. Similarly, in Cordial, the plaintiff provided evidence that,

---

[10] See Beck v. City of Pittsburgh, 89 F.3d 966, 973-74 (3d Cir. 1996) (concluding that because six complaints of excessive force within a five-year period against the defendant officer "came in a narrow period of time and were of similar nature, a reasonable jury could have inferred that the Chief of Police knew, or should have known, of [the defendant officer's] propensity for violence when making arrests").

over a four-year period, 426 excessive force complaints were
filed, but only four of those complaints were sustained and that
during that time there were seven excessive force complaints
filed against one of the defendant officers. 2014 WL 1095584, at
*5. The evidence presented by the Cordial plaintiff showed that
many of the excessive force complaints and the internal affairs
investigation reports against the defendant officer were
"similar in nature to the instant matter," although none of the
complaints were sustained. Id. The plaintiff in Cordial also
presented evidence that the Atlantic City police chief reviewed
many of the internal affairs investigative reports before they
were forwarded to the prosecutor's office. Id. The Cordial court
concluded, citing to Beck, that "a reasonable jury could infer
from the narrow time period and similar allegations 'that the
Chief of Police knew, or should have known, of [the defendant
officer's] propensity for violence when making arrests.'" Id. at
*5. Consequently, the Cordial court found that the plaintiff
"presented sufficient evidence to demonstrate genuine issues of
material fact regarding whether Atlantic City has a custom of
acquiescing in the use of excessive force by its officers." Id.
The Cordial court also found that plaintiff's submission of
testimony from a former internal affairs investigator, as well
as the IA investigation reports themselves were sufficient such
that "a reasonable jury could infer that the IA investigation

32

process is designed to insulate the accused officers from penalty." Id. at *6. The Cordial court concluded, citing to Worrall, that "'[t]he evidence presented [was] sufficient to establish that Atlantic City was the "moving force" behind [p]laintiff's injuries due to its failure to act despite prior notice.'" Id.

On the record presented here, however, Plaintiff has not made any showing to support his municipal liability claims pursuant to § 1983 against Defendant City of Atlantic City. While Plaintiff has provided evidence that Defendant City of Atlantic City has a use of force policy (see Declaration of Timothy J. McIlwain, Esq., Exhibit A (D.I. 38-1), 3-16 on the docket), Plaintiff has failed to set forth any evidence, whether it be in the form of certification, affidavit, or deposition testimony, from which a reasonable juror could conclude that Defendant City of Atlantic City established a policy or custom that caused Plaintiff's injury. The Court agrees with Defendants' position that "[s]imply, there is no evidence whatsoever to support [P]laintiff's Monell claim." (Defs.' Brief [D.I. 28-2], 23.) In considering the summary judgment record, the Court finds no facts and can draw no inferences to support Plaintiff's Monell claims. The Court will therefore enter summary judgment in favor of Defendants as to all Monell claims against Defendant City of Atlantic City.

Defendants also move for summary judgment in connection with Plaintiff's claim that he was denied medical care. Plaintiff alleges pursuant to 42 U.S.C. § 1983, that "Defendants[] failed to provide Plaintiff medical care in the wake of the beating despite Plaintiff's extensive injuries" and that "Defendants' denial of medical care exacerbated Plaintiff's physical injuries and caused Plaintiff increased trauma, mental and emotional distress, and increased pain and suffering." (Complaint [D.I. 1], ¶¶ 21-22.) Defendants again assert that there is no evidence to support this claim. (Brief [D.I. 28-2], 24-25.)

A deliberate indifference standard under the Due Process Clause of the Fourteenth Amendment applies to an individual's claim for inadequate medical care during the course of an arrest. See Smith v. Gransden, 553 F. App'x 173, 177 (3d Cir. 2014) (noting "[d]eliberate indifference to the medical needs of arrestees violates their Fourteenth Amendment right to due process"); see also Suarez v. City of Bayonne, 566 F. App'x 181, 187 (3d Cir. 2014) (applying a deliberate indifference standard to a plaintiff's claim for denial of medical care allegedly suffered during the course of an arrest). Under this standard, a plaintiff must provide evidence of "(i) a serious medical need, . . . (ii) acts or omissions by [law enforcement] officials that indicate deliberate indifference to that need, .

34

. . and (iii) a causal connection between the indifference and the plaintiff's injury." Smith, 553 F. App'x at 177 (internal citations and quotation marks omitted). This standard also governs a pretrial detainee's denial of medical care claim.[11] Natale v. Camden Cty. Corr. Facility, 318 F.3d 575, 581 (3d Cir. 2003).

The Third Circuit has found deliberate indifference "where there was 'objective evidence that [a] plaintiff had serious need for medical care,' and prison officials ignored that evidence[,]" Natale, 318 F.3d at 582 (3d Cir. 2003) (quoting Nicini, 212 F.3d at 815 n.14), and "where 'necessary medical treatment is delayed for non-medical reasons.'" Id.

---

[11] In Natale, the court applied the deliberate indifference standard to a pretrial detainee's claim for inadequate medical care and noted that the Third Circuit has "[i]n previous cases . . . found no reason to apply a different standard than set forth in Estelle[v. Gamble, 429 U.S. 97 (1976)] . . . when evaluating whether a claim for inadequate medical care by a pre-trial detainee is sufficient under the Fourteenth Amendment." 318 F.3d at 581 (citation omitted). In Estelle, the Supreme Court held that a convicted prisoner's right to medical care is afforded by the Eighth Amendment and that "deliberate indifference to serious medical needs of prisoners" is the standard that governs a convicted prisoner's claim for denial of such care. 429 U.S. at 104 (1976). The Natale court noted that "the Supreme Court has concluded that the Fourteenth Amendment affords pretrial detainees protections 'at least as great as the Eighth Amendment protections available to a convicted prisoner,' without deciding whether the Fourteenth Amendment provides greater protections." 318 F.3d at 581 (quoting City of Revere v. Massachusetts Gen. Hosp., 463 U.S. 239, 244 (1983)).

(quoting <u>Monmouth Cty. Corr. Institutional Inmates v. Lanzaro</u>, 834 F.2d 326, 347 (3d Cir. 1987)).

In <u>Hill v. Algor</u>, the plaintiff, who was found by the court to be an arrestee at the time he was allegedly denied medical care, sought the "application of the Fourth Amendment 'objective reasonableness' standard to his medical care claims."[12] 85 F. Supp. 2d 391, 409 (D.N.J. 2000). The <u>Hill</u> court

---

[12] The standard that should be applied to arrestee and pretrial detainee denial of medical care claims made pursuant to § 1983 varies in other circuits. <u>See</u> <u>Ortiz v. City of Chicago</u>, 656 F.3d 523, 530 (7th Cir. 2011) (finding that the Fourth Amendment objective reasonableness standard governs denial of medical cases where there has not yet been a judicial determination of probable cause); <u>see also</u> <u>Hernandez v. City of Beaumont</u>, No. 13-967, 2014 WL 688183, at *3 (C.D. Cal. Feb. 21, 2014) (observing that "[t]he Ninth Circuit 'treats the failure to provide adequate medical care during and immediately following an arrest as a claim properly brought under the Fourth Amendment and subject to the Fourth Amendment's objective reasonableness standard'"); <u>see also</u> <u>Burks v. Perrotta</u>, No. 13-5879, 2015 WL 2340641, at *7-8 (S.D.N.Y. May 15, 2015) (observing that "this Court previously determined that the Fourth Amendment should apply to pre-arraignment denial of medical care claims" and that "[u]nder the Fourth Amendment standard, the Court must [determine] whether the asserted denial of medical treatment was objectively unreasonable" (internal quotation marks omitted); <u>see also</u> <u>Miranda-Rivera v. Toledo-Dávila</u>, 813 F.3d 64, 74 (1st Cir. 2016) (reasoning that "Fourteenth Amendment substantive due process requires the government to provide medical care to persons who are injured while being apprehended by the police" and applying a deliberate indifference standard to the plaintiff's denial of medical care claim where the alleged denial of medical care occurred during the plaintiff's arrest and while plaintiff was in a holding cell at the police station); <u>see also</u> <u>Goodwin v. Kennedy</u>, No. 13-1774, 2015 WL 1040663, at *7 (E.D.N.Y. Mar. 10, 2015) (recognizing that "[t]here is a split of authority in [the Second] Circuit regarding the proper constitutional basis for denial of medical care claims brought by pre-trial arrestees against law

concluded that under existing Third Circuit precedent, it "must deny [the plaintiff's] request and apply the 'deliberate indifference' standard" to the plaintiff's denial of medical care claims. Id. The Hill court noted that the plaintiff's excessive force claims and medical care claims were consequently "assessed under different standards" and articulated that "[w]hether a uniform standard should be applied to both types of claims arising out of post-arrest but pre-arraignment detention, however, is a matter best resolved by the court of appeals." Id. at 409 n.27.

At least two courts in this district have held that the Fourth Amendment applies to denial of medical care claims asserted by an arrestee and thus have applied an objective

---

enforcement officials[]" and concluding that the deliberate indifference standard under the Fourteenth Amendment should be applied to a plaintiff's denial of medical care claim where the plaintiff alleged the defendants "act[ed] with deliberate indifference to his injuries by denying his requests for medical care after his arrest"); see also Weatherford ex rel. Thompson v. Taylor, 347 F. App'x 400, 403 (10th Cir. 2009) (noting that a deliberate indifference standard under the Fourteenth Amendment applies to a pretrial detainee's claims alleging inadequate medical care); see also Shaver v. Brimfield Twp., 628 F. App'x 378, 381 n.3 (6th Cir. 2015) (noting that the Sixth Circuit has "not yet resolved whether claims of inadequate medical care by [pretrial] detainees . . . are . . . cognizable under the Fourth Amendment's objective reasonableness standard" and declining to resolve the issue in that case because the plaintiff specifically brought a deliberate indifference claim under the Fourteenth Amendment); see also Bailey v. Feltmann, 810 F.3d 589, 593 (8th Cir. 2016) (observing "this court has not resolved whether an arrestee's claim alleging denial of medical care is analyzed under the Due Process Clause or the Fourth Amendment").

reasonableness standard under the Fourth Amendment to denial of medical care claims that arose during a plaintiff's arrest. See Davis, 421 F. Supp. 2d at 855-57 ("apply[ing] the Fourth Amendment's reasonableness standard rather than the Fourteenth Amendment deliberate indifference standard applied to pretrial detainees" to a denial of medical treatment claim for "actions [that] took place during [the plaintiff's] arrest," but applying the Fourteenth Amendment's deliberate indifference standard to the plaintiff's denial of medical care claims for conduct which occurred after the plaintiff arrived at the police station); see also Pierce v. Cherry Hill Twp., No. 09-6487, 2013 WL 3283952, at *8 (D.N.J. June 26, 2013) (citing Davis and concluding that a claim for denial of medical care that was allegedly requested during the course of an arrest was "appropriately viewed through the prism of the Fourth Amendment's ban of unreasonable seizures").

The parties' submissions do not reconcile the standard to apply to Plaintiff's denial of medical care claim. Defendants cite to Davis in asserting that Plaintiff's denial of medical care claim is governed by the Due Process Clause of the Fourteenth Amendment (Defs.' Brief [D.I. 28-2], 24), and argue that in order to succeed on his denial of medical care claim, Plaintiff must provide "'evidence of a serious medical need and acts or omissions by prison officials indicating deliberate

38

indifference to those needs.'" (Id. (quoting Davis, 421 F. Supp. 2d at 856-57).) Defendants then cite to the Davis court's finding that it was reasonable for police officers to wait thirty-five minutes to wash pepper spray out of the plaintiff's eyes.[13] (Id. at 24-25 (citing Davis, 855-57).) Defendants argue that in this case "there was no evidence that [P]laintiff had an objectively serious medical need" and that Plaintiff was not denied medical treatment because Plaintiff "was examined and his face cleaned." (Id. at 25.)

Plaintiff's submissions do not address what standard should govern Plaintiff's denial of medical care claim.[14] Plaintiff's counsel represented at oral argument that the surveillance video set forth the disputed material facts from which the Court should deny summary judgment. Plaintiff's complaint does not set forth the constitutional right or standard to be applied to Plaintiff's denial of medical care claim. (Complaint [D.I. 1], ¶¶ 20-26.) Plaintiff alleges pursuant to § 1983 that he was denied medical care and specifically alleges "Defendants[] failed to provide Plaintiff

---

[13] Defendants cite to Davis at a section of the opinion where the Davis court was applying the Fourth Amendment objective reasonableness standard to the plaintiff's claims. See Davis, 421 F. Supp. 2d at 855-57.
[14] Defendants argue "Plaintiff does not challenge Defendants' request for summary judgment on his claim that he was denied medical care. Because this portion of Defendants' motion is unchallenged, it should be granted." (Defs.' Reply Brief [D.I. 44], 13.)

medical care in the wake of the beating despite Plaintiff's extensive injuries." (<u>See</u> Complaint [D.I. 1], at ¶ 21.)

In light of <u>Smith</u> and <u>Suarez</u>, the Court shall consider Plaintiff's claims pursuant to the deliberate indifference standard under the Fourteenth Amendment. Plaintiff asserts in his brief that he "was completely unconscious after being punched to the ground" (Pl.'s Brief [D.I. 38], 19) and Plaintiff's counsel argued at oral argument that Plaintiff had been "knocked out." Plaintiff contends that while in the in-house holding area, "Plaintiff was requesting medical attention" (Pl.'s Response [D.I. 38], ¶ 10(l)), and denies Defendants' assertion that Plaintiff was treated by the in-house nurse.[15] (<u>See</u> <u>id.</u> at ¶ 10(i).)

The surveillance video shows Plaintiff being handcuffed approximately thirty (30) seconds after falling to the ground and being brought to his feet by the Defendant Officers approximately fifteen (15) seconds after being handcuffed. The video also shows approximately (20) minutes after Plaintiff was struck by Defendant Officer Miltenberger, an individual wearing what appears to be medical gloves, wiping off

---

[15] Defendants' statement of material facts provides "[t]he in-house nurse was summoned to treat [P]laintiff for bleeding from his mouth" (Defs.' Facts [D.I. 28-1], at ¶ 10(k) and that "[a]n ambulance was dispatched to treat [P]laintiff for a laceration on his face. (<u>Id.</u> at ¶ 11(o).)

the lip and chin area of Plaintiff's face which appears to be bleeding.[16]

The medical records provided by Defendants are dated August 12, 2012 at 19:56, after the incident. (See, e.g., Hegarty Cert., Exhibit K [D.I. 28-3], 96 on the docket.) The physician notes from Plaintiff's hospital visit following the alleged excessive force provide Plaintiff was diagnosed with a "jaw contusion;" a "lip contusion"; and a "knee contusion." (Hegarty Cert., Exhibit L [D.I. 28-3], 99 on the docket.) The Aftercare Instructions state that "[c]ontusion is the medical term for a bruise"; "[t]he doctor does not believe you have injured essential organs, like your eyes, brain or spine[;]" and "[f]ollow up with Dr. in 3 Day(s)" (Hegarty Cert., Exhibit M [D.I. 28-3], 101 on the docket.) The Aftercare Instructions also provide "[o]ne concern after a facial injury is the possibility of other injuries to the head or neck. The doctor has determined that you do not have any other serious injuries and that it is safe for you to go home. If you develop symptoms of a head or neck injury, return immediately to the nearest Emergency Department." (Id. at 102 on the docket.) Additionally, a "Final Report" from Clara Maass Medical center provides "NO

---

[16] At oral argument Plaintiff's counsel suggested that he had not seen any evidence in the video of Plaintiff being provided with any type of medical care while inside of the holding cell. The video belies this assertion.

RADIOGRAPHIC EVIDENCE OF AN ACUTE FRACTURE." (See Hegarty Cert., Exhibit N [D.I. 38-3], 105 on the docket.)

The Court concludes that Plaintiff's denial of medical care claim against Defendant Officers Miltenberger and Holland fails because Plaintiff has not provided evidence from which a reasonable juror could conclude that he suffered from a serious medical need. See Monmouth Cty. Corr. Institutional Inmates, 834 F.2d at 346 (reasoning that a "[a] medical need is serious . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention" (citations and internal quotation marks omitted)); see also Hill v. Curcione, 657 F.3d 116, 122 (2d Cir. 2011) (noting that to establish a serious medical condition, "the alleged deprivation must be sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists"). While a reasonable juror may conclude that Plaintiff briefly lost consciousness and suffered from several contusions, Plaintiff has failed to submit any evidence from which a jury could conclude that Plaintiff suffered an objectively serious medical need and Defendant has demonstrated a lack of such evidence. See Mahoric v. Hogue, No. 11-575, 2013 WL 6118693, at *3-4 (W.D. Pa. Nov. 21, 2013) (finding the plaintiff failed to demonstrate an objectively serious medical

42

need where the plaintiff received no medical care after he alleged that he tripped, hit his head on a concrete wall, temporarily lost consciousness, and had "blurry vision" upon regaining consciousness and concluding that while the plaintiff's injuries may have been "mildly uncomfortable," the plaintiff had "not alleged that he suffered any more than just minimal temporary discomfort or that he later complained about any pain or lingering injuries that he suffered as a result of the fall" nor that "he in fact suffered any lasting or permanent injuries as a result of not receiving medical treatment"); see also McClendon v. Cty. of Nassau, No. 11-0190, 2012 WL 4849144, at *6 (E.D.N.Y. Oct. 11, 2012) (noting "[b]ruises and lacerations alone are generally insufficient to support a claim of constitutional deprivation"). Moreover, Plaintiff has provided no evidence that any delay or denial of medical care "'exacerbated his medical condition, caused infection, or otherwise subjected him to an increased risk of harm.'" See Horvath v. City of New York, No. 12-6005, 2015 WL 1757759, at *6 (E.D.N.Y. Apr. 17, 2015). Notably Plaintiff offers "no evidence that his condition worsened" as a result of the alleged delay or denial of medical care. Id. Furthermore, Plaintiff has presented no evidence that any injury he suffered was the result of the alleged delay or denial of medical care as opposed to the alleged excessive force. See id. (granting a motion for summary

43

judgment with respect to a denial of medical care claim where the plaintiff "offer[ed] evidence of a number of injuries resulting from [an] alleged assault[,]" but made "no attempt to connect [those injuries] to the alleged delay in medical attention"). Plaintiff has provided no facts to refute the contents of the medical records or to suggest that Plaintiff received any further treatment other than that which was provided while Plaintiff was in the in-house holding cell. Consequently, the Court concludes that Plaintiff has not demonstrated a serious medical need and in light of this finding, "it is unnecessary for the [c]ourt to consider whether the subjective element of [p]laintiff's deliberate indifference claim has been satisfied." Goodwin, 2015 WL 1040663, at *14; see also, Mahoric, 2013 WL 6118693, at *4 (concluding "there is nothing in the record from which a reasonable jury could find that the objective component of a deliberate indifference claim has been satisfied . . . even assuming [that the] [d]efendant [] deliberately dismissed [the] [p]laintiff's requests for medical care without regard to his health or safety"). In considering the summary judgment record, the Court finds no facts and can draw no inferences to support a finding that the Defendant Officers Miltenberger and Holland were deliberately indifferent to Plaintiff's medical needs. Accordingly, the Court will enter

44

summary judgment in favor of Defendants Miltenberger and Holland as to Plaintiff's denial of medical care claim.

Likewise, to the extent Plaintiff's claim for denial of medical care is asserted against Defendant City of Atlantic City, summary judgment shall be granted in favor of Defendant City of Atlantic City. See Mulholland v. The Gov't Cty. of Berks, 706 F.3d 227, 238 n.15 (3d Cir. 2013) (noting "[i]t is well-settled that, if there is no [constitutional] violation in the first place, there can be no derivative municipal claim" under § 1983).

Consequently, for the reasons set forth, and for good cause shown, Defendants' motion for summary judgment [D.I. 28] is granted in part and denied in part. An appropriate order will be entered.

                                    s/ Ann Marie Donio
                                    ANN MARIE DONIO
                                    UNITED STATES MAGISTRATE JUDGE

Dated: March 31, 2016